UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

TIMOTHY L. SCATES, )
 )
    Plaintiff, )
 )
 ) No. 1:12-CV-408
v. )
 ) Judge Curtis L. Collier
COMMISSIONER OF SOCIAL SECURITY, )
 )
    Defendant. )

**M E M O R A N D U M**

Plaintiff Timothy L. Scates ("Plaintiff") brought this action on December 11, 2012, seeking judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying Plaintiff disability insurance benefits ("DIB"). The Court referred the matter to United States Magistrate Judge Susan K. Lee, pursuant to 28 U.S.C. § 636(b) and in accordance with Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation ("R&R") regarding the disposition of Plaintiff's motion for judgment on the pleadings (Court File No. 13) and Defendant's motion for summary judgment (Court File No. 15). The magistrate judge filed an R&R (Court File No. 18) recommending the decision of the Commissioner be affirmed, Plaintiff's motion for judgment on the pleadings be denied (Court File No. 13), Defendant's motion for summary judgment be granted (Court File No. 15), and the case be dismissed. Plaintiff filed an timely objection to the R&R (Court File No. 19). For the following reasons, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 18).

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed a DIB application in December 2009, and an Administrative Law Judge ("ALJ") held a hearing on May 17, 2011. The ALJ issued a decision on May 20, 2011 finding that

Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, and Plaintiff subsequently sought relief in this court.

Before the ALJ were numerous medical records relating to Plaintiff's physical and mental health. With respect to his physical condition, Plaintiff submitted records detailing his history of Von Hippel-Lindau disease, which is a genetic disorder "characterized by the abnormal growth of tumors throughout the body, but primarily in the central nervous system. These tumors are called hemangioblastomas, which may develop in the brain, retinas, and other areas of the central nervous system" (Court File No. 14, p. 3, n. 2). The disease produced in Plaintiff retinal hemangioblastomas, which caused him to undergo several eye surgeries. According to records from Dr. Randall Funderburk, the ophthalmologist who treated Plaintiff from 1999 to 2011, the surgeries were successful and Plaintiff's vision has remained stable, with his eyesight staying at 20/20 through his last visit preceding the hearing. Plaintiff mentioned back pain at the hearing before the ALJ, but no medical records were produced to show he was ever diagnosed or treated for back pain.

Regarding Plaintiff's mental health, before the ALJ were medical records from several doctors who treated Plaintiff from 2002 to 2007 for anxiety and depression (Tr. 248-61). In 2005 Plaintiff was sent for a psychiatric evaluation where the evaluator. Dr. Wayne Y. Kim, determined that Plaintiff had dysthymic disorder (depression) and personality disorder, though he ruled out major depression (Tr. 239). Dr. Kim stated that Plaintiff had "no overt psychotic distortion in thinking or perception and he seemed to have a strong desire to change his way of controlling his outbursts" (Tr. 238). During visits from 2006 to 2010, doctors noted that Plaintiff was responding well to Lexapro, which helped stabilize his mood. (Tr. 248-254, 279, 339).

In 2010, Plaintiff was seen for a psychological consultative exam with David M. Thompson,

M.A., who found that Plaintiff was cooperative, his speech was normal and comprehensible, his behavior was appropriate and cooperative, and his thought processes were organized and goal-directed (Tr. 305). Plaintiff told Mr. Thompson that he was laid-back when taking his medication but became angry and anxious when he was not (Tr. 306). Mr. Thompson found that Plaintiff had good attention and concentration, was able to remember information, including current events, and had an average intelligence (*id.*). Additionally, he found Plaintiff had a slight limitation in understanding and remembering, a slight limitation in sustaining concentration and persistence, a moderate limitation in interacting with others, and a moderate limitation in adapting to changes and requirements (Tr. 308).

Thomas D. Neilson, Psy.D., a state agency psychological consultant, issued a psychiatric review in 2010 finding that Plaintiff had a medically determinable impairment of adjustment order, along with anxiety and depression (Tr. 326). However, he also found that Plaintiff's claimed functional limits were contradicted by his medical records (*id.*). Dr. Neilson concluded Plaintiff's medication was working well and he did not have a severe psychiatric impairment (Tr. 326). He also completed a functional capacity assessment, which determined that Plaintiff was (1) able to understand and remember simple and detailed tasks (though he could not made independent decisions at an executive level); (2) capable of sustaining concentration and persistence for two-hour periods in an eight hour day with customary breaks; (3) able to interact with the public, supervisors, and coworkers on a superficial level; and (4) capable of setting limited goals and adapting to infrequent change (Tr. 330).

Before the ALJ was also a 2011 "Certificate for Return to School or Work" completed by Dr. Roger T. Nelson (Tr. 305). The document, in full, states that Plaintiff was "unable to work at

3

this time - indefinitely" because of "Von Hippel-Lindau, Bipolar, memory loss, adjustment disorder, anger mgt, unipolar depression, decreased concentration" (*id.*). This was not accompanied by any treatment notes or explanation, and the extent of any treatment relationship was unknown.

Also in the record before the ALJ was an Assessment of Mental Limitations form completed by Dr. George N. Graves, who treated Plaintiff several times in the months before the hearing (Tr. 385). Dr. Graves designated Plaintiff "poor" or "none" on all categories except appearance, which was designated "good."[1] Dr. Graves issued a letter on June 14, 2011 (weeks after the hearing) stating that Plaintiff's depression, obsessive-compulsive disorder, adjustment disorder, mood disorder, bipolar disorder, and anger management dysfunction "were all present well before" June 30, 2010 (Tr. 417). However, the treatment records underpinning the letter and the Assessment of Mental Limitations were not before the ALJ, as they had not been submitted by the time he issued his decision.

At the hearing, Plaintiff discussed back pain (for which he provided no supportive records) as well as his mental health, including problems with memory and controlling his anger (Tr. 45). He testified that he was monitored for Von Hippel-Lindau every year and that his vision remained stable (*id.*). The ALJ noted that there had been no treatment records submitted to support the

---

[1] As the magistrate judge noted in more detail,
> It was Dr. Graves's opinion that Plaintiff's ability to perform activities of daily living independently was poor, he had no capacity to interact appropriately or communicate effectively, he had no ability to concentrate, and he had no ability to adapt to stressful circumstances in work or work-like settings (Tr. 386). Dr. Graves further opined that Plaintiff was unable to follow work rules, he was unable to deal with the public, and he was unable to deal with the stress of ordinary work (Tr. 386). Dr. Graves opined that Plaintiff's reliability and persistence were poor (Tr. 387). Dr. Graves also opined that Plaintiff had no ability to relate to supervisors and coworkers, no ability to work at a consistent pace for acceptable periods of time, and no ability to timely complete work tasks.

(Court File No. 18, pp. 7-8).

4

opinions of Drs. Nelson and Graves (Tr. 32). Plaintiff's counsel noted that she had "a little bit of trouble getting the records" but did not provide further explanation (*id.*). She told the ALJ that "if we need to get those to you afterwards, we'll get them to you as soon as we can" (*id.*). The ALJ asked if "we normally try to get the evidence in before the hearing," and counsel responded, "I know, Your Honor, but sometimes we have difficulties with doctor's offices" (*id.*). The ALJ noted that without the benefit of having the medical records before him, the opinions of Drs. Nelson and Graves were "virtually valueless" (*id.*). Asked whether there were any objections to what was in the record, Plaintiff's counsel said no (Tr. 33).

The missing records had not been submitted by the time the ALJ issued his Findings of Facts and Conclusions of Law on May 20, 2011. He found the record did not contain medical signs or laboratory findings sufficient to substantiate the existence of a severe medically determinable impairment (Tr. 23). According to the second step of the five-step process for determining eligibility for disability benefits, this meant Plaintiff was not disabled.[2] The ALJ concluded that Plaintiff was not under a disability at any time from the alleged onset date through the date he was last insured and thus was not due benefits (*id.*).

---

[2] The five-step process provides that,
1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
2) *If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.*
3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
5) If the claimant can make an adjustment to other work, the claimant is not disabled.
*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (emphasis added).

Plaintiff then appealed to the Social Security Administration's Appeals Council, which denied review (Tr. 1). Plaintiff subsequently appealed to this Court. Plaintiff argued before the magistrate judge that the ALJ should have considered evidence indicating the presence of a medically determinable impairment; that the ALJ violated his duty to develop the record by not holding the record open for post-hearing submission of Dr. Graves's treatment records; and that the Appeals Council should have remanded the claim for consideration of new and material evidence (Court File No. 14). The magistrate judge issued an R&R finding each of these arguments without merit. The Court concludes the R&R is sound for the reasons that follow.

## II.  STANDARD OF REVIEW

This Court must conduct a de novo review of those portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1). The Court's standard of review is essentially the same as the magistrate judge's—review is limited to determining if the ALJ's findings are supported by substantial evidence and if proper legal standards were used. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). "Substantial evidence" means evidence a reasonable mind might accept to support the conclusion at issue. *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). Substantial evidence is greater than a scintilla but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Brainard*, 889 F.2d at 681. If supported by substantial evidence, the Court must affirm the ALJ's findings, even if substantial evidence also supports the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). The substantial evidence standard presupposes there is a zone of choice within which the decision makers can go either way, without interference by the

courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). The ALJ need not discuss every aspect of the record or explain every finding at length but must "articulate with specificity reasons for the findings and conclusions that he or she makes" to facilitate meaningful judicial review. *Bailey v. Comm'r of Soc. Sec.*, No. 90-3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999).

### III. DISCUSSION

#### A. Substantial Evidence

Plaintiff raises three objections to the R&R. First, Plaintiff argues the magistrate judge erred in finding there was substantial evidence in the record supporting the ALJ's finding that Plaintiff did not have a severe impairment that would prevent him from working for 12 months. Plaintiff asserts the ALJ ignored the signs, symptoms, and laboratory findings regarding Plaintiff's Von Hippel-Lindau disease. *See* 20 C.F.R. §404.1528. This objection is not well taken, however, as the ALJ's decision did discuss Plaintiff's health problems arising from the disease, including the numerous eye surgeries he underwent. But the medical evidence in the record, and Plaintiff's own testimony during the hearing, showed that the symptoms caused by Von Hippel-Lindau disease were well controlled and that Plaintiff's eyesight remained good.

Plaintiff also contends the evidence demonstrated his outbursts of rage were not fully controlled and harmed his ability to function. In this vein, he argues the ALJ should not have rejected outright the opinion of Dr. Graves regarding Plaintiff's mental health, as the regulations require the ALJ to evaluate every medical opinion received. 20 C.F.R. § 404.1527. The Court notes, however, the ALJ did consider Dr. Grave's opinion, although he ultimately concluded it was unsubstantiated and so deserved "essentially no weight" (Tr. 23). In the record was an Assessment of Mental Limitations, wherein Dr. Graves checked off the various limitations Plaintiff had and then

7

listed Plaintiff's conditions as bipolar, memory loss, and Von Hippel-Lindau disease. There was nothing in the record to indicate Dr. Graves's treatment relationship with Plaintiff or the reasons underpinning his medical findings. The ALJ explained that Dr. Graves's opinion, along with Dr. Nelson's, "are quite conclusory and provide little explanation of the evidence relied on in forming these opinions" (*id.*).[3] Further, the ALJ noted that both doctors' opinions were outside their expertise, as neither was a psychiatrist or specialized in psychology and psychiatric medicine (*id.*). In addition, the opinions contrasted sharply with the other evidence presented (*id.*). In short, the ALJ considered the opinions but had legitimate reasons to give them very little weight. The ALJ's decision, which was based on numerous medical records showing there were not medical signs or laboratory findings sufficient to demonstrate the existence of a medically determinable impairment, was based on substantial evidence and should not be disturbed.

### B. Duty to Develop the Record

Plaintiff next argues the magistrate judge erred in finding the ALJ did not violate his duty to fairly and fully develop the record. Plaintiff asserts the ALJ should have kept the record open after the hearing to accept Dr. Graves's treatment records. Social Security proceedings are "inquisitorial rather adversarial" and ALJs have a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (citing *Richardson*, 402 U.S. at 400-01). ALJs are responsible for "ensuring that every claimant receives a full and fair hearing." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (citing *Richardson*, 402 U.S. 389)).

---

[3] The Court notes that in his objection Plaintiff is only concerned with Dr. Graves's records, not Dr. Nelson's.

The duty to develop the record "rises to a special duty" when the claimant is unrepresented and unfamiliar with the hearing procedures. *Id*. That special duty requires an ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts [and] be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id*. at 1051 (internal citations omitted). That said, "[o]nly under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record." *Trandafir v. Comm'r of Soc. Sec.*, 58 F. App'x 113, 115 (6th Cir. 2003) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir.1986)).

According to the rule governing submission of evidence for an ALJ hearing, any written evidence that the claimant "wish[es] to be considered at the hearing must be submitted no later than five business days before the date of the scheduled hearing." 20 C.F.R. § 405.331(a) (emphasis added). However, evidence may be submitted *after* the hearing if it is submitted before the ALJ's decision is issued, there is a "reasonable possibility that the evidence . . . would affect the outcome of your claim" and one of the following applies:

> (1) [The Social Security Administration's] action misled you;
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

§ 405.331(b), (c).

In the instant case, although the ALJ did not have a "special duty" to develop the record given that Plaintiff was represented, Plaintiff argues the ALJ nonetheless violated his duty to fairly and fully develop the record. Specifically, Plaintiff contends the ALJ erred by not ensuring Dr.

9

Graves's treatment notes were made part of the record, despite the fact that they had not been submitted before the hearing occurred or even before the ALJ's decision was rendered.

The Court notes that § 405.331(c), the regulation controlling submission of evidence after a hearing but before a decision is issued, "puts the burden on the claimant" to (1) produce an adequate reason why the evidence could not have been submitted earlier and (2) show that there was a reasonable possibility that the evidence would affect the outcome. *Young v. Colvin*, 3:12-CV-245, 2013 WL 4591554 (E.D. Tenn. Aug. 28, 2013). Here, Plaintiff did not actually submit the evidence before the decision was made, so § 405.331(c) technically could not help him. Further, even if he *had* submitted the evidence before the ALJ decided the claim, Plaintiff has failed to show that an "unusual, unexpected, or unavoidable circumstance beyond [his] control prevented [him] from submitting the evidence earlier." § 405.331(c). Plaintiff's brief notes that his lawyer "specifically informed the ALJ that Dr. Graves's office had not fully cooperated with several attempts to procure Plaintiff's treatment notes" (Court File No. 19, p. 8). The Court does not find in the record where this was actually conveyed. Rather, during the hearing Plaintiff's counsel provided no indication of whether multiple requests were made for the records and when any requests were made. Counsel instead told the ALJ that she "had a little bit of trouble getting the records from [Dr. Graves]" and that "sometimes we have difficulties with doctor's offices" (Tr. 32). When the ALJ asked if there were any objections before closing evidence at the hearing, Plaintiff said no.

Plaintiff contends the ALJ should have held open the record indefinitely to wait for Dr. Graves's records. In this case, the Court cannot conclude that the duty of an ALJ to fairly and fully develop the record requires the ALJ to deviate from 20 C.F.R. § 405.331 in such a way. The regulation requires that materials be submitted five days before a hearing, but it carves out certain

10

exceptions for evidence filed after that deadline and even after the hearing. As shown above, however, Plaintiff did not fall into any exception. Particularly in light of the fact that Plaintiff was represented by counsel, the Court cannot find that the magistrate judge erred in determining the ALJ satisfied his obligation to fairly and fully develop the record in this case.

### C. Appeals Council Decision

Plaintiff's final objection is to the magistrate judge's finding that the Appeal Council did not err in refusing to remand in light of new and material evidence. Sentence six of 42 U.S.C. § 405(g) provides that

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there *is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding*.

In short, "[a] remand pursuant to sentence six of 42 U.S.C. § 405(g) is appropriate 'only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ.'" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir.2010)). "'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding.'" *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 647 (6th Cir. 2013) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is material if "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Schmiedebusch*, 536 F. App'x at 647. And "'[g]ood cause' is demonstrated by 'a reasonable justification for the

11

failure to acquire and present the evidence for inclusion in the hearing before the ALJ.'" *Johnson*, 535 F. App'x at 509 (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

Plaintiff argues that, although Dr. Graves's treatment records existed at the time of the hearing, they were "unavailable" and that Plaintiff attempted to obtain them. But as the magistrate judge correctly points out, Plaintiff has at no point shown that he took adequate and timely steps to obtain the records. That counsel "had a little bit of trouble getting the records" and noted that "sometimes we have difficulties with doctor's offices" does not support a finding that the records were unavailable (Tr. 32). Additionally, these excuses do not provide "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ," which means Plaintiff has also failed to show "good cause" for not submitting the records on time. *Johnson*, 535 F. App'x at 509 (quoting *Foster*, 279 F.3d at 357). The Court need not determine whether the records would have been material. Either of the Court's conclusions regarding availability of the records and lack of good cause is sufficient to support the magistrate judge's finding that the Appeals Council did not err when it refused to remand pursuant sentence six of 42 U.S.C. § 405(g).

**IV.   CONCLUSION**

The Court has considered Plaintiff's objections after its complete review of the record, and has found it without merit. Accordingly, the Court will **ACCEPT** and **ADOPT** the magistrate judge's R&R (Court File No. 18). The Court will **DENY** Plaintiff's motion for judgment on the pleadings (Court File No. 13), and will **GRANT** Defendant's motion for summary judgment (Court File No. 15). The Court will **AFFIRM** the Commissioner's decision and will **DISMISS** the case.

12

**An order shall enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

13